Ann Mae **CAMPOLONGO**, Executrix of the Estate of Benjamin J. Campolongo, deceased; and Ann Mae Campolongo, individually, Plaintiff,

v.

The **CELOTEX CORPORATION**, et al., Defendants.

Civ. A. No. 82–2953.

United States District Court, D. New Jersey.

March 1, 1988.

James C. Gavin, Gavin & Gavin, Haddonfield, N.J., for plaintiff.

David A. Speziali, McCarter & English, Newark, N.J., for defendants Celotex Corp., et al.

David D. Bromberg, Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, Short Hills, N.J., for defendant Combustion Engineering, Inc.

MEMORANDUM

WOLIN, District Judge.

## A. BACKGROUND

Recently this court commenced a product liability failure-to-warn trial involving insulation products containing asbestos. After jury selection, the case was settled. The warrant for the memorialization of this memorandum lies in the case management decision of the court with regard to the order of plaintiff's proofs, the elimination of conduct-related testimony and the severance of plaintiff's negligence and punitive damage claims from those sounding in strict liability.[1] More specifically, the *quid pro quo* for the relief sought was defendants' waiver of the affirmative defenses of assumption of the risk and superceding cause. Defendants also agreed to a jury instruction that an asbestos product without a warning is a defective product as a matter of law.

Undeniably asbestos exposure litigation has created a court logjam of unprecedented dimension. It is estimated that "more than 30,000 asbestos personal injury claims were filed nationwide by 1986, and an additional 180,000 claims are projected to be on court dockets by the year 2010." *In re School Asbestos Litigation,* 789 F.2d 996, 1000 (3d Cir.1986). The portent of this staggering and almost incomprehensible number of claims compels the legal and the judicial communities to mutually rethink the organic structure of a product liability trial, especially when it is premised on an asbestos-related injury. The magnitude of the problem invites the employment of extraordinary case management techniques provided they equally serve the litigants,

the court and the ends of justice. *See In the Matter of Asbestos Litigation Venued in Middlesex County,* No. L–52237–81 (N.J.Super.Ct., Law Div.), *aff'd,* 99 N.J. 201, 491 A.2d 700 (1984) (severance of compensatory from punitive damage claims); *Wilson v. Johns-Manville Sales Corp.,* 107 F.R.D. 250, 251 (S.D.Texas 1985) (suits of fifty asbestos claimants joined together for single trial on bifurcated issues of liability and punitive damages).

This court has not concluded that it will be unable to afford every asbestos claimant a separate trial. Each of these trials tend to be lengthy affairs; yet this court also understands that an asbestos-related injury is often a devastating and fatal occurrence requiring prompt judicial attention. Therefore, a posthumous award, while easing the family's burden of loss, provides little solace or comfort to the injured plaintiff. Further, the specter of remediless claimants and culpable bankrupt corporations is a prospect more real than fanciful and a foundation for judicial concern. Fortuitous docket placement is a cruel and unkind measure for determining who shall share and share not.

In the instant action Benjamin J. Campolongo, through his executrix, seeks *inter alia* compensatory and punitive damages. It is alleged that he was exposed to an array of asbestos products and ultimately contracted mesothelioma, a progressive and fatal disease.[2]

By a motion *in limine* immediately prior to trial, the defendants moved for a severance, at trial, of strict liability claims, thereby precluding the presentation of evidence directed towards a negligence theory as well as a punitive damage claim. The

---

1. This court notes that under the New Jersey Products Liability Act of 1987, N.J.Stat.Ann. §§ 2A:58C–1 to 2A:58C–7 (West 1987):

   [T]here is an urgent need for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages to harm caused by products, including certain principles under which liability is imposed and the standards and procedures for the award of punitive damages.

   *Id.* at § 2A:58C–1(a). However, this law appears by definition inapplicable to asbestos product liability actions. *See* § 2A:58C–6 ("The

   provisions of this act shall not apply to any environmental tort action."), *and* § 2A:58C–1(b)(4) (defining "environmental tort action" as "a civil action seeking damages for harm where the cause of the harm is exposure to toxic chemicals or substances").

2. The plaintiff was employed by Robert A. Keasbey, as an insulation contractor from 1929 to 1968 when he retired from a non-related brain abscess. His mesothelioma was diagnosed in January, 1981 and he died in October, 1981 at 74 years of age.

plaintiff objected, asserting that a trial limited to a strict liability theory contravenes Fed.R.Civ.P. 8(e)(2) and would seriously prejudice plaintiff in his direct case while providing no benefit to the court. Plaintiff further contended that a severance as anticipated by defendant's application will alter plaintiff's burden regarding proximate cause and permit the scrutiny of his conduct and that of others while avoiding an examination of defendants' conduct.

## B. ANALYSIS

Rule 8(e)(2), a rule of pleading, focuses on pleading and not the order of proof at trial.[3] Though there exists authority permitting a plaintiff to plead and submit alternative theories to a jury without the necessity of election, *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 410 A.2d 674 (1980), this court is not bound by that authority; nor is it controlling that other district judges have chosen not to sever claims on past occasions.[4]

On the other hand, Rule 42(b) provides: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, or third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States."

Although this rule is discretionary, its implications are clear. The litany of alternatives phrased in the disjunctive permit the trial court to define the contours of a trial, provided it preserves the inviolate right of trial by jury. In New Jersey, the forum state, courts have uniformly severed compensatory from punitive damage claims.[5] Similarly, in our neighboring state of Pennsylvania, both federal and state courts have engaged in varying severance procedures often staying the punitive damage claims for a period of one year.[6]

The collective wisdom of these courts forged from the crucible of experience is a persuasive influences entitled to a substantial degree of judicial deference, provided it accomplishes the goals of:

(1) simplification of the fact finding process,

(2) lack of confusion,

(3) judicial economy, and

(4) fundamental fairness.

There exist other policy reasons and concerns beyond those enumerated. Foremost, is the conduct of a trial free of the inflammatory influences that naturally flow from conduct-related proofs which possess the capacity to adversely affect a product-oriented proceeding through a disproportionate compensatory verdict. A balanced trial provides for a verdict reasonably related to the injury sustained and the resulting consequential damages. However, as soon as conduct-related proofs are intermingled with those that are purely product-related, a fiery element has been

---

**3.** Rule 8(e)(2) provides:

"A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11."

**4.** *Gogol v. Johns–Manville Sales Corp.*, 595 F.Supp. 971 (D.N.J.1984); *Valori v. Johns–Man-*

*ville Sales Corp.*, slip op. No. 82–2686 (D.N.J. Dec. 11, 1985); *Meloni, et al. v. Johns–Manville Sales Corp., et al.*, slip op. No. 81–2542 (D.N.J. Oct. 1, 1986).

**5.** Aside from Judge Keefe in Middlesex County, other judges in Camden, Atlantic and Hudson Counties have also severed compensatory from punitive damage claims.

**6.** In the Eastern District of Pennsylvania, medical causation and compensatory damages are tried first, followed by a liability trial, and if necessary, a punitive damage trial. In Philadelphia, Judge Klein of the Court of Common Pleas, has severed punitive damage claims and stayed them for a period of years.

added that has the capacity to inject punishment under the guise of a compensatory award. This is wrong and courts should not permit this to happen when they possess the authority to do otherwise. Indeed, despite Justice Clifford's statement in *Fischer v. Johns-Manville Corporation,* 103 N.J. 643, 655, 512 A.2d 466 (1986), that "there is no reason why a failure-to-warn strict products liability case and a claim for punitive damages cannot be litigated together", he tellingly omits language of disapproval for future disposition of severed asbestos-related claims.[7]

Simply put, the severance of the punitive facet of damages from the compensatory claim with the concomitant elimination of conduct-related proofs guarantees, to the extent humanly possible, a fair compensatory award free of the taint and suspicion that pervades a verdict when all issues are litigated together.

Most recently, this Circuit in *In re Asbestos Litigation,* 829 F.2d 1233 (3rd Cir. 1987), had the opportunity to review an en banc order of the District Court, *In re Asbestos Litigation,* 628 F.Supp. 774 (D.N.J.1986) (en banc).[8] In referring to *Beshada v. Johns-Manville Products Corp.,* 90 N.J. 191, 447 A.2d 539 (1982), the court recognized case management as a primary judicial concern and that expertise of the court with respect thereto deserves due deference. 929 F.2d at 1240. The court also accorded the presumption of regularity to the *Besehada* choice of alternatives when measured against the social, economic and administrative nature of the issues which confronted the *Beshada* court. *Id.*

The focus of *Beshada* was whether the product was defective for lack of a warning. Therefore, the court reasoned, a manufacturer's knowledge at the time he distributed the product is not relevant in a strict liability proceeding. Unlike a negligence claim, knowledge of the dangerousness of the product is imputed to defend-

ants. *Freund v. Cellofilm Properties, Inc.,* 87 N.J. 229, 432 A.2d 925 (1981). Though severely criticized, *Beshada* survives but is limited to the circumstances giving rise to its holding. *Feldman v. Lederle Laboratories,* 97 N.J. 429, 455, 479 A.2d 374 (1984). Since New Jersey chooses to treat asbestos cases differently than other product liability cases, it does not require a quantum leap for this court to suggest that, as a matter of law and policy, an asbestos-related product without a warning is a defective product. We have moved beyond the risk-utility analysis and past concern of whether the benefit outweighs the risk. Experience demonstrates that an asbestos-related product is unsafe because a warning could have made it safer at virtually no added cost and without limiting its utility. Indisputably, a warning would have lessened exposure and avoided countless injuries.

Since *Freund* stated unequivocally that there is a difference between negligence and strict liability in failure-to-warn cases, this distinction becomes more pronounced when it is buttressed by legal fictions. First, the imputation of knowledge in *Freund* and its subsequent endorsement in *Beshada.* Second, the declaration here, that an asbestos-related product without a warning is a defective product. As stated in *Beshada* "a major concern of strict liability ... is the conclusion that if a product was in fact defective, the distributor of the product should compensate its victims for the misfortune that it inflicted on them." 90 N.J. at 204, 477 A.2d at 546. With *Beshada* in mind and with the awareness that plaintiff still retains the burden of demonstrating that the defective product was the proximate cause of the plaintiff's injury, this court is satisfied that the proposed instruction is merely a logical extension of that which has preceeded it. Moreover, it is a position that the New Jersey Supreme Court could reasonably adopt.

---

7. Though this statement is dictum, it is surprising in light of the Supreme Court's affirmance. *In the Matter of Asbestos Litigation Venued in Middlesex County,* 99 N.J. 201, 491 A.2d 700 (1984).

8. The Third Circuit upheld a "rational basis" challenge to the constitutionality of *Beshada*'s elimination of the state-of-the-art defense in failure-to-warn asbestos-related claims grounded on the theory of strict liability.

Regardless of the instruction pertaining to finding the product defective as a matter of law, none of the salutary principles previously enumerated will be accomplished through bifurcation if the defendants are permitted to advance conduct-related affirmative defenses. Their presence invite rebuttal testimony of equally egregious conduct-related proofs, thereby obviating the need for a severed trial. Abandonment of traditional trial strategems will achieve a more formidable purpose, that being a true compensatory verdict reflective of the injury sustained. Under the current state of strict liability law, this value judgment rests solely with the defense and it is the *sine qua non* for that which they propose —a conduct-free trial. Its prospect invites analysis.

Central to the defense of assumption of the risk is voluntary and unreasonable conduct wherein a plaintiff voluntarily proceeds to encounter a known danger. *Whitehead v. St. Joe Lead Co., Inc.,* 729 F.2d 238 (3rd Cir.1984). As Judge Gibbons stated: "Thus, assumption of the risk has three elements: the plaintiff's conduct must be (1) knowing, (2) voluntary, and (3) unreasonable." *Id.* at 251–252 (citation omitted). The heart of the state-of-the-art defense that *Beshada* precluded was the showing that at relevant times the distributor did not know nor could have known of the dangerous propensity of an asbestos-related product. Thereafter, knowledge was imputed to the distributor but it was not imputed to those who were affected by it. Accordingly, to posit a defense on that which the distributor did not know and yet attribute that knowledge to an employee is illogical and unsound. This is especially true when, as in many situations, an employee has no meaningful control over his work environment. 729 F.2d at 252. Since contributory fault was found to be unavailable as a defense in *Suter v. San Angelo*

*Foundry & Machine Company,* 81 N.J. 150, 406 A.2d 140 (1979), a design defect injury case occurring in an employee-factory setting, its inapplicability here is even more compelling.

The elimination of the affirmative defense of superseding cause or the intervening acts of others, however, is more troublesome. In *Menna v. Johns–Manville,* 585 F.Supp. 1178 (D.N.J.1984), *aff'd* 772 F.2d 895 (3rd Cir.1985), Judge Ackerman, when confronted with this issue, observed that the plaintiff always has the obligation to demonstrate that a defect in the seller's product was the proximate cause of the injury. He then ruled that the employer's conduct as a "sophisticated customer" was relevant to the question of proximate causation. Such a defense in non-asbestos cases has been permitted as it pertains to the theory of concurrent causation. *See Michalko v. Cooke Color & Chem. Corp.,* 91 N.J. 386, 400, 451 A.2d 179 (1982); *Freund, supra,* 87 N.J. at 245–248, 432 A.2d 925.

Nevertheless, conduct of others connected with the workplace, though relevant and admissible, is the type of proof that plaintiff contends necessitates rebuttal by allegations of defendants' negligence. For example in *Butler v. PPG Industries, Inc.,* 201 N.J.Super. 558, 563–564, 493 A.2d 619 (App.Div.), *certif. denied,* 102 N.J. 298, 508 A.2d 186 (1985), the Appellate Division noted that under a theory of employer's concurrent proximate causation, the manufacturer still remained liable when responsible for the original defect. The court concluded that "the alleged negligence of [the employer] could not exculpate [the manufacturer] and there was accordingly no warrant for the jury to be presented with these proofs." *Id.* at 564, 493 A.2d 619.[9] In the instant action plaintiff submits that in a hyperstrict liability asbestos case the only

---

**9.** Inasmuch as defendants assert that plaintiff's employer is at least partially responsible for the injury, the issue is whether an action for contribution or indemnification arises against the employer. *See, e.g., Stephenson v. R.A. Jones & Co., Inc.,* 103 N.J. 194, 200, 510 A.2d 1161 (1986) (under workmen's compensation scheme contribution recovery by manufacturer against plain-

tiff's employer allowed only if manufacturer is "secondarily or vicariously liable, not personally at fault[ ]") (citation omitted). By analogy to *Stephenson* and in light of the judicial policy underlying *Beshada,* this court seriously questions whether defendants have a cause of action for contribution—they are clearly more than mere passive tortfeasors.

conduct appropriate for measurement is that of other co-defendants whose products are likewise identifiable at the job site. The issue of concurrent causation is limited; it assumes a horizontal plane, thereby avoiding the pitfalls of a vertical attack. This court agrees.

A conduct-free trial, as requested by the movant, in order to be procedurally fair requires the elimination of conduct as to all but co-defendants, thereby eliminating the necessity for plaintiff to rebut through negligence proofs any inference that his or his employer's conduct contributed to his devastating injury and loss. Such a trial necessarily concerns itself with the following: (1) product identification at the workplace, (2) that the product without warning was defective, (3) that the defect existed when the product was distributed under the control of the defendant, (4) conditions of plaintiff's exposure, (5) that the defective product was the proximate cause of the injury, and (6) medical causation. Traditional notions of proximate cause affirmative defenses predicated on the conduct of others do not lend themselves to a *Beshada*-type case, and though legally relevant, should be waived.

## C. CONCLUSION

Returning to the wording and substance of Rule 42(b), the analysis of this court addresses all of the salutary principles that partake of the rule. Undoubtedly, the elimination of conduct-related proofs will further the convenience of all concerned as the result of the diminution of the quantum of proofs required, expenses of trial and jury utilization. Assuredly, a defined focus on product defect and the compensatory damage aspect of the case will serve to promote a fair and impartial verdict devoid of conduct-related influences. Moreover, the ability of the jury to fathom all of the complexities of asbestos-related litigation will not be tested through trial by ordeal when methods for simplification of issues exist without prejudice to the litigants.

With the court's elimination of conduct-related proofs for all litigants, the likelihood of prejudice is lessened. The inflammatory aspect of the trial is removed and perhaps all that remains is a sterile presentation of facts. Although that type of presentation may be dramaless and in another setting represent poor theatre, it is the precise prescription for curing the ailment caused by product exposure in an asbestos-related compensatory damage trial.

But for the settlement of this case, the order of proofs would have separated the strict liability count from the negligence count and severed the compensatory damage claim from that seeking punitive damages. The severed counts and claims would have proceeded with the same jury at the conclusion of the first trial, should the plaintiff so have elected to proceed.

The decision of this court was limited to the facts of this case and although its reasoning may have similar application in other asbestos-related cases, it is not to be construed as a definitive determination applicable to all asbestos-related claims. Its origins rest in this court's comprehensive analysis of the policy considerations appropriate to asbestos litigation coupled with a genuine concern that all asbestos injured claimants receive their day in court. A necessary counter-weight between litigants is that the eventual award, if any, be purely compensatory and not reflect an added assessment of punitive damages.