430 S.E.2d 316

**STATE of West Virginia ex rel. Donald C. McCORMICK, Relator,**

v.

**Honorable Paul ZAKAIB, Judge of the Circuit Court of Kanawha County; Allstate Insurance Company, an Illinois Corporation; and David Dailey, Respondents.**

No. 21458.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1993.

Decided Feb. 25, 1993.

James C. Peterson, Hill, Peterson, Carper, Bee & Dietzler, Charleston, for relator.

Charles M. Love, III, Benjamin L. Bailey, Bowles, Rice, McDavid, Graff & Love, Charleston, for respondents.

MILLER, Justice:

In this original proceeding, the relator, Donald C. McCormick, seeks a writ to prohibit enforcement of the respondent judge's

June 1, 1992 order. The order precluded the relator's expert witness, Jack Lane, from testifying because Mr. Lane was allegedly in possession of confidential information protected by the attorney-client privilege and the attorney work-product doctrine. We find that the trial court erred; accordingly, we grant the writ.

## I.

Donald C. McCormick, the relator, had his 1984 Ford Escort insured by the respondent, Allstate Insurance Company. On August 28, 1988, Mr. McCormick was involved in an automobile accident which severely damaged his car. When David Dailey, an Allstate claims adjuster, inspected Mr. McCormick's vehicle, he determined that it was a total loss. After looking up the value assigned to a 1984 Ford Escort in the National Automobile Dealers Association Used Car Guide, Mr. Dailey took "conditioning deductions" totaling $595.[1] On September 9, 1988, the relator was issued an insurance draft for $1,590.

On November 8, 1988, Mr. McCormick filed a lawsuit against Allstate and its adjuster, David Dailey, alleging that Allstate routinely takes "conditioning deductions" in total loss cases and that this practice is a violation of the company's contractual and statutory duties. In preparation for litigation, Mr. McCormick retained the services of Jack Lane, a former employee of Allstate,[2] to testify as a witness on his behalf. The plaintiff wanted Mr. Lane to testify about Allstate's practices in taking "condi-

tioning deductions."[3] Upon learning that Mr. Lane had been employed by the relator as a witness, Allstate filed a motion *in limine* to exclude his testimony because Mr. Lane, while employed at Allstate, had participated in collecting raw data in preparation for threatened litigation by Rita and David Stuart that raised issues identical to those asserted by Mr. McCormick.

The attorney representing the Stuarts had, in August of 1988, sent a letter to Allstate, along with a draft complaint designed as a class action to recover damages for taking improper reconditioning fees in automobile total loss claims. The letter advised that unless Allstate settled with the Stuarts for their motor vehicle total loss claim, the suit would be filed. Allstate subsequently settled and the complaint was never filed.

As a result of this incident, a Mr. MacKay, an attorney in Allstate's corporate litigation section in Chicago, requested its automobile claims director, a Mr. Tortorello, to compile data as to what amount of clean-up deductions had been taken in total loss claims in West Virginia. This request was passed to a Mr. Shelton who was in charge of the regional office in Valley Forge, Pennsylvania, that supervised Allstate's West Virginia offices.

Mr. Shelton then contacted a Mr. Hepps, who was in the Kanawha Valley office, and Mr. Lane in the Bridgeport, West Virginia office and asked them to randomly examine total loss automobile files of Allstate and compile data on the "conditioning deduc-

1. According to the "Total Loss and Salvage Report" prepared by Allstate and attached to the relator's complaint, these fees consisted of a $50 charge for cleaning the engine and a $20 charge for cleaning the vehicle's interior. $525 was deducted from the settlement because the vehicle had minor surface blemishes, scratches on the exterior paint, and stained car seats.

    In September of 1988, the West Virginia Insurance Commissioner issued Informational Letter No. 55, which was distributed to all insurance carriers operating in the state. The letter informed the companies that it is a bad faith settlement practice to take reconditioning fees in total loss vehicle cases. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073, *cert. denied*, 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987).

2. Mr. Lane had been employed by Allstate for fifteen years. In September of 1988, he was the market claims manager in the company's Bridgeport, West Virginia office and worked in that capacity until he ended his employment with the company in June of 1990 and began working as an insurance consultant.

3. The exact nature of Mr. Lane's testimony is not clear from the record. We have not been provided with Mr. Lane's deposition nor any claim files. Both parties merely assert that he was going to testify about Allstate's practices and procedures. As an employee for over fifteen years, Mr. Lane doubtless acquired voluminous nonconfidential knowledge about Allstate's routine business practices.

tions." This was done by Mr. Lane, who reported the findings, based on a review of some 167 total loss automobile files, to Mr. Shelton.

After the McCormick suit was filed in Kanawha County, the plaintiff pursued discovery and obtained from Allstate West Virginia automobile total loss files for the years 1983 to 1988 in which conditioning fees had been charged. Shortly before this case was to be tried, Allstate moved the circuit court to exclude Mr. Lane as an expert. Allstate argued that the information compiled in anticipation of the *Stuart* litigation formed an integral part of Allstate's strategy in this case. It claimed that Mr. Lane's analysis as an expert would be based on privileged information. To substantiate these claims, Allstate provided the trial court with three documents it contends demonstrate that Mr. Lane had been privy to confidential information.[4]

After receiving these documents, the trial court conducted an *in camera* examination of Mr. Lane. During his testimony, Mr. Lane recalled that he had his clerical employees pull total loss files and that he may have had an employee collect the necessary information. He testified that he did not analyze the files or even look at them. Moreover, he testified that he was not aware of any threatened litigation. At the time this information was being collected, the McCormick claim had not yet been filed. When asked how he obtained his knowledge about Allstate's practice of taking conditioning fees, Mr. Lane explained: "[I]t is not like this is a big secret, you know, that Allstate had about this clean up fee."

Based on the three documents, Mr. Lane's testimony, and the holding in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), the trial court ruled that Mr. Lane was precluded from testifying for the plaintiff. The plaintiff then filed a petition for a writ of prohibition in this Court. We issued a rule to show cause why the writ should not be granted.

## II.

■ We find the trial court's reliance on *Upjohn Co. v. United States, supra,* to be misplaced. *Upjohn* involved an attempt to obtain discovery of certain internal documents generated by its general counsel to its foreign general and area managers. The general counsel in his letter advised that the chairman of Upjohn had requested that he investigate the possibility of illegal payments being made to foreign officials. The letter advised that the investigation was highly confidential and enclosed a questionnaire which was to be completed. The managers were also instructed not to discuss the investigation with anyone other than employees of Upjohn who might be able to provide the relevant information.

The Internal Revenue Service sought to obtain these questionnaires after it instituted litigation against Upjohn claiming illegal tax deductions had been made with regard to its payments to foreign officials. Upjohn claimed that the questionnaires were not discoverable as they were a result of work-product and were protected by the attorney-client privilege.

The crucial distinction in this case is that, at the time Allstate sought to block the

4. The three documents were sealed by the trial court, and two of them have never been seen by the relator. Document No. 1 is a memorandum from Attorney MacKay to Allstate's claims director, Mr. Tortorello, dated September 9, 1988, instructing Mr. Tortorello to review total loss vehicle claims in West Virginia and to determine how often conditioning deductions were taken. Document No. 2 is a memorandum from Mr. Shelton, the regional manager, to a Mr. Osborne, who is not identified except as an Allstate employee, stating that the pertinent total loss files were being reviewed and that the results would be forwarded as soon as they were compiled. Mr. Lane did not receive a copy of either Document No. 1 or Document No. 2 and neither mention his name. Document No. 3 is a memorandum from Jack Lane to Ronnie Shelton, dated September 8, 1988, in which Mr. Lane explained that 167 total loss vehicle claim files had been reviewed. The memorandum further detailed how often a clean-up charge was taken, the amount deducted from the claim, and how often each claims representative in the Bridgeport office elaborated on the reason for taking the conditioning deduction.

expert testimony of Mr. Lane, it had already turned over to the plaintiff's attorney through discovery the 167 automobile total loss adjustment files that contained reconditioning charges.

■ Even assuming, arguendo, that the original information contained in the three sealed documents was confidential and protected by the attorney-client privilege, Allstate waived this privilege by voluntarily producing the claim files in response to the plaintiff's discovery request.[5] We recognized in Syllabus Point 12 of *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988), that the attorney-client privilege could be waived by voluntary disclosure of privileged communications to a third person:

"The attorney-client privilege may be waived if disclosure of privileged communications is made to third parties."

■ It appears to be generally recognized that if a party turns over material as a result of discovery under the rules of civil procedure and makes no claim of an attorney-client privilege, then such privilege is deemed waived.[6] *See, e.g., In re Grand Jury Investigation of Ocean Transp.,* 604 F.2d 672 (D.C.Cir.), *cert. denied,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); *Edens v. Goodyear Tire & Rubber Co.,* 858 F.2d 198 (4th Cir. 1988); *Goldsborough v. Eagle Crest Partners,* 105 Or.App. 499, 805 P.2d 723 (1991), *aff'd* 314 Or. 336, 838 P.2d 1069 (1992); *Eloise Bauer & Assocs., Inc. v. Electronic Realty Assocs., Inc.,* 621 S.W.2d 200 (Tex. Civ.App.1981). *See generally* 1 J. Strong, *McCormick on Evidence* 342–43 (4th ed. 1992).

■ Ordinarily, when the attorney-client privilege is waived with respect to a particular document, it is also waived for all other communications relating to the same subject matter. As explained by the Fourth Circuit Court of Appeals in *United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982):

"Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." (Citation omitted).

*See also In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982); *John Morrell & Co. v. Local Union 304A, United Food & Commercial Workers,* 913 F.2d 544 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991); *United States v. Cote,* 456 F.2d 142 (8th Cir.1972); *Garfinkle v. Arcata Nat'l Corp.,* 64 F.R.D. 688 (S.D.N.Y.1974). *See generally* 8 C. Wright & A. Miller, *Federal Practice & Procedure* ¶ 2016 (1970).

Thus, when Allstate disclosed the claim files to Mr. McCormick during discovery without objection, the company waived any attorney-client privilege which arguably could have been asserted regarding the three sealed documents, because the information contained in them relates to the same subject matter and does not disclose any additional privileged communications.[7]

---

5. In note 4, *supra,* we summarized the contents of the three sealed documents. Documents 1 and 2 pertain to the collection of data on total loss claims. Document 3 contains Mr. Lane's summary of the 167 files reviewed. Certainly, the factual data extracted from the files is not privileged.

6. Some courts have recognized that a party may seek to avoid the attorney-client waiver after a voluntary disclosure by showing some substantial excusable error. *See United States v. Zolin,* 809 F.2d 1411 (9th Cir.1987); *Transamerican Computer Co., Inc. v. International Business Mach. Corp.,* 573 F.2d 646 (9th Cir.1978); *Farm*

*Credit Bank v. Huether,* 454 N.W.2d 710 (N.D. 1990).

7. The same waiver principle exists as to any claim of an attorney work-product under Rule 26(b)(3) of the Rules of Civil Procedure. Even if we were to assume that the privilege existed with regard to the three sealed documents described in note 4, *supra,* the voluntary production of the files to the plaintiff's attorney would waive any claim of attorney work-product as to the same information contained in the sealed documents. *See generally* 4 *Moore's Federal Practice* ¶ 26.64[4] at 26–390 (1991).

We also reject Allstate's assertion that Mr. Lane cannot act as an expert and render an

Finally, we have recognized in Syllabus Point 1 of *State Farm Mutual Automobile Insurance Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992), after reviewing some of our earlier cases, that in certain instances a writ of prohibition could be used to control a circuit court's discovery order:

"A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders."

We find these conditions to exist in this case, as the error is a legal one and is substantial because it prohibits the plaintiff from utilizing his only expert witness. For the foregoing reasons, we issue the writ of prohibition as prayed for.

Writ granted.

opinion about Allstate's business practice. This is not a situation as in *Wang Lab., Inc. v. Toshiba Corp.*, 762 F.Supp. 1246 (E.D.Va.1991), where the disqualified expert was hired by Wang's attorney and given access to corporate papers. The court found the papers confidential. The expert then proceeded to represent the adverse party. Here, as we have already found the automobile total loss files were voluntarily turned over, Mr. Lane can testify regarding the information contained in these files, as well as the company forms. His knowledge of the meaning of this information as a result of his employment with Allstate may also be stated.