569 S.E.2d 150

**STATE of West Virginia EX REL. Thomas ATKINS, Martha Atkins; Helen Crafton; Ricky Scarbro, Carrie Scarbro; Vernon "Gene" Atkins, Arlene Atkins; John D. Ellison, Tina Ellison; Mathew Griffith, Juanita Dawna Griffith; Roger Moles, Grace Moles; Jerry Workman, Landa Workman; Nancy Lytton; Casey Lay, Crystal Lay; Billy Daniels; Randall Pittman, Victoria Pittman; Richard Dale Catlett; Timmy A. Williams, Janet L. Williams; Gary Buckland; Thomas Vance; Darrell Wor-**

---

rell, Barbara Ann Worrell; Tommy Craddock, Mary Ellen Craddock; Thomas Wayne Atkins, II; Matthew Chase Pittman, Randi Lynn Pittman; Linda Gail Atkins Bowling; and Mazie Lena Worrell, Petitioners,

v.

Honorable Robert A. BURNSIDE, Jr., Judge of the Circuit Court of Raleigh County; Belt Specialty Corporation; Scandura, Inc.; Goodyear Tire & Rubber; Pang Rubber Company; Patch Rubber Company; ITW Devcon; Normac Adhesive Products, Inc.; Lewis–Goetz and Company, Inc.; Uniroyal, Inc.; West Virginia Belt Sales & Repairs, Inc.; Linatex Corporation of America; Atlas Belt Service, Inc.; Belt Service, Inc.; C & E Belt Company, Inc.; Quality Belt Vulcanizers, Inc.; Alert Belt Service, Inc.; Raleigh Mine & Industrial Supply, Inc.; Beckley Belt Service, Inc.; Rema Tip/Top North America, Inc.; Mountaineer Mine Safety & Training, Inc.; Industrial Rubber Products Company; Ohio Valley Vulcanizing, Inc.; Richwood Industries, Inc.; Shaw–Almex Fusion Corporation; Elkay Mining Company; Island Creek Corporation; Eastern Associated Coal Corporation; Consolidation Coal Company; BethEnergy Mines, Inc.; Cannelton, Inc., and other unknown John Doe Business Entities, Respondents.

No. 30510.

Supreme Court of Appeals of West Virginia.

Submitted June 11, 2002.

Decided June 27, 2002.

Gary S. Wigal, Gianola, Barnum & Wigal, L.C., Morgantown, West Virginia, for petitioners.

Anita R. Casey, Cynthia Majestro, Mac-Corkle, Lavender & Casey, Charleston, West Virginia, for respondent, Patch Rubber Company.

Erik K. Falk, Davies, McFarland & Carroll, P.C., Pittsburgh, Pennsylvania, for respondent, ITW Devcon.

Paul W. Roop, II, Roop Law Office, P.L.L.C., Beckley, West Virginia, for respondent, Belt Specialty Corporation.

Michael M. Fisher, Offutt, Fisher & Nord, Huntington, West Virginia, for respondent, Scandura, Inc.

William Geiger, Davies, McFarland & Carroll, Inc., Pittsburgh, Pennsylvania, for respondent, Goodyear Tire & Rubber Company.

Glen A. Murphy, McQueen, Harmon, Potter & Cleek, Charleston, West Virginia, for respondent, Pang Rubber Company.

L. John Argento, Dickie, McCamey & Chilcote, Pittsburgh, Pennsylvania, for respondent, Lewis Goetz & Company, Inc., d/b/a Gooding Rubber Company.

Shawn P. George, George & Lorenson, P.L.L.C., Charleston, West Virginia, for respondents, Uniroyal, Inc., and Uniroyal Holding.

Harold S. Albertson, Jr., Albertson & Jones, Charleston, West Virginia, for respondent, Linatex, Inc.

Concetta A. Silvaggio, Willman & Arnold, Pittsburgh, Pennsylvania, for respondent, Belt Service, Inc., and C & E Mine Belt Service, Inc.

Richard L. Lancianese, Baker, Lancianese, Campbell & Conaty, Huntington, West Virginia, for respondent, Quality Belt Vulcanizers, Inc.

John R. Fowler, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, West Virginia, for respondent, Raleigh Mine & Industrial Supply, Inc.

Phillip J. Tissue, Oak Hill, West Virginia, for respondent, Beckley Belt Service, Inc.

Landers P. Bonenberger, McDermott & Bonenberger, P.L.L.C., Wheeling, West Virginia, for respondent, Rema Tip Top/North America, Inc.

Eric M. James, Karen L. Weingart, Spilman, Thomas & Battle, P.L.L.C., Charleston, West Virginia, for respondent, Mountaineer Mine & Safety Training.

Jeffrey H. Hall, Hendrickson & Long, P.L.L.C., Charleston, West Virginia, for respondent, Industrial Rubber Products Company.

M. Shane Harvey, Jackson & Kelly, Charleston, West Virginia, for respondents, Elkay Mining Company, Island Creek Corporation, Consolidated Coal Company, BethEnergy Mines, Inc., and Cannelton, Inc.

Timothy M. Miller, Robinson & McElwee, L.L.P., Charleston, West Virginia, for respondent, Eastern Associated Coal Corporation.

PER CURIAM.

The Petitioners, as plaintiffs [1] in consolidated chemical exposure cases, seek a writ of mandamus requiring the Circuit Court of Raleigh County to make findings of fact and conclusions of law in support of its discovery management plan. The Petitioners further seek a writ of prohibition requiring the lower court to vacate the portion of its discovery management plan which consolidates twenty-three cases for discovery purposes. Having thoroughly evaluated the record, briefs, and arguments of counsel, we find that the lower court's findings of fact and conclusions of law provide sufficient basis for consideration by this Court. We therefore refuse the Petitioners' request for a writ of mandamus requiring additional findings of fact and conclusions of law.

With regard to the discovery management plan and the consolidation of the twenty-three cases for discovery purposes in reverse bifurcation fashion, we grant the requested writ of prohibition, as moulded, with express directions as stated herein.

---

1. The Petitioners will be referred to herein as either "Petitioners," where the reference is in conjunction with this requested writ, or plaintiffs where the reference is in conjunction with the underlying civil action.

### I. Facts and Procedural History

In *State ex rel. Crafton v. Burnside*, 207 W.Va. 74, 528 S.E.2d 768 (2000), involving these same chemical exposure civil actions, this Court addressed some of the discovery matters implicated in the present case. In *Crafton*, this Court explained that the lower court had adopted a case management plan, based upon the consent of the plaintiffs and defendants, which would permit the cases to be tried in a reverse bifurcation manner,[2] allowing issues of damages and causation to be tried prior to issues of liability of the multiple defendants. Upon advice of new legal counsel, the plaintiffs sought reversal of the reverse bifurcation plan. The lower court denied the motion, and the plaintiffs filed a petition for writ of prohibition with this Court, seeking to prevent implementation of the case management plan of reverse bifurcation. This Court granted the writ of prohibition, based upon the withdrawal of consent by the plaintiffs, and remanded the issue to the lower court for *de novo* review of whether the plan of reverse bifurcation should be utilized in this case. 207 W.Va. at 79, 528 S.E.2d at 773.

Particularly relevant to the present inquiry, this Court in *Crafton* also strongly cautioned the lower court that, in its *de novo* review on remand, the benefits and detriments of the reverse bifurcation methodology should be carefully weighed. Specifically, this Court stated as follows:

> In the instant case, the plaintiffs sought to be relieved of the effect of their initial counsel having stipulated, due to his undisputed inexperience and ignorance, to a trial procedure that is contrary to that which is enjoyed by essentially all other ordinary civil litigants in West Virginia. Moreover, the economy and fairness of the sort of procedure that was agreed to by the plaintiffs' initial counsel is the subject of serious dispute.

In light of the foregoing principles, we conclude that the plaintiffs should have been allowed to withdraw their consent to the reverse bifurcation procedure, and that the circuit court abused its discretion in failing to allow them to do so. On the limited record before us, we cannot rule on the issue of whether, absent the consent of the plaintiffs to "reverse bifurcation," the circuit court should adopt that procedure. The issue of possible reverse bifurcation should be addressed by the circuit court *de novo*, making any record that may be necessary, without giving any effect to the plaintiffs' previous stipulation to the procedure.

*Id.* at 78–79, 528 S.E.2d at 772–73 (footnotes omitted). In footnote four of *Crafton*, this Court discussed the fact that the methodology of reverse bifurcation has not been the traditional practice of litigants in this State, noting that "[o]ur historic preference for unitary trials is clear in our jurisprudence." *Id.* at 78 n. 4, 528 S.E.2d at 772 n. 4. In explaining that reverse bifurcation has not been universally embraced, this Court cited *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238 (Utah 1998), in which the Utah court declared that reverse bifurcation is rare and "drastic" technique. *Crafton*, 207 W.Va. at 79 n. 5, 528 S.E.2d at 773 n. 5 (quoting *Walker Drug*, 972 P.2d at 1245). In *Crafton*, this Court also directed the lower court's attention to the following authorities on the issue of the legitimacy of the reverse bifurcation method:

> *See generally* Roger H. Transgrud, "Joinder Alternatives in Mass Tort Litigation," 70 *Cornell L.Rev.* 779, 827–29 (1985). *See also* Sandra A. Smith, "Polyfurcation and the Right to a Civil Jury Trial: Little Grace in the Woburn Case," 25 *Boston College Env.Aff.L.Rev.* 649, 685 (1998) (focusing on the lawsuit that underlies the book and movie, "A Civil Action" and discussing how inappropriate "polyfurcation"

---

2. In footnote one of *Crafton*, this Court explained:

> "Reverse bifurcation" is the inevitable obfuscatory jargon coined by lawyers and judges to describe the trial of a case where damages are established first and liability second.... The process deserves consideration if a short damages

trial and a lengthy liability trial is predicted.... I suspect the process is appropriate only for a fairly narrow category of cases.

207 W.Va. at 76 n. 1, 528 S.E.2d at 770 n. 1 (quoting *In re Report of the Advisory Group for the United States District Court*, 1993 WL 30497 at *52–54 (D.Me. Feb.1, 1993)).

can be "particularly harmful to injured parties" in the toxic tort context). *See also* J.M. Granholm and William J. Richards, "Bifurcated Justice: How Trial–Splitting Devices Defeat the Jury's Role," 26 *U. Toledo L.Rev.* 505 (1995).

*Id.* at 79 n. 5, 528 S.E.2d at 773 n. 5. This Court's statements in *Crafton* were very detailed regarding the fact that this case had not been referred by the lower court to the Mass Litigation Panel, pursuant to Trial Court Rule 26.01(b)(1). This Court reasoned:

Many of the factors that have been suggested as supporting a reverse bifurcated trial procedure, such as clearly established liability that would make a second phase of the trial unlikely, demonstrated absence of prejudice to the plaintiffs, lack of duplicative witnesses, and a great number of plaintiffs or defendants—are not present in the instant case.

*Id.* at 79 n. 5, 528 S.E.2d at 773 n. 5.

On remand from the directives of this Court in *Crafton,* the lower court entered an order stating that the cases of the original nine plaintiffs would be consolidated with the additional fourteen plaintiffs for discovery purposes and that discovery would be conducted through the process of reverse bifurcation, with damages and causation considered prior to issues of liability.[3] The Petitioners now bring this writ of mandamus seeking findings of fact and conclusions of law and writ of prohibition seeking to prevent the consolidation of all twenty-three plaintiffs for discovery purposes.

## II. Standard of Review

The Petitioners seek writs of mandamus and prohibition, contending that the lower court exceeded its legitimate powers in issuing the discovery management plan. In syllabus point two of *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984), this Court explained:

"Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in

which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. Pt. 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953).

In syllabus point four of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), this Court enunciated the applicable standard for determining whether to grant a writ of prohibition, as follows:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

In syllabus point one of *State ex rel. United Hospital Center, Inc. v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 (1997), this Court stated as follows:

" 'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W.Va.Code,* 53–1–1.' Syl. pt. 2, *State ex rel. Peacher v. Sencindiver,* 160

---

**3.** The lower court did not indicate whether it planned to try the cases through the mechanism of reverse bifurcation.

W.Va. 314, 233 S.E.2d 425 (1977)." Syl. pt. 2, *State ex rel. Kees v. Sanders*, 192 W.Va. 602, 453 S.E.2d 436 (1994).

■ With specific regard to the issuance of a writ of prohibition in a discovery matter, this Court has explained that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992); *see also State ex rel. U.S. F & G v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995); *State ex rel. McCormick v. Zakaib*, 189 W.Va. 258, 430 S.E.2d 316 (1993).

■ The Petitioners raise issues concerning discovery rulings and the consolidation of cases under Rule 42 of the West Virginia Rules of Civil Procedure.[4] With respect to a trial court's ruling on discovery matters, we have held that the following abuse of discretion standard of review should be applied:

A trial court is permitted broad discretion in the control and management of discovery, and it is only for an abuse of discretion amounting to an injustice that we will interfere with the exercise of that discretion. A trial court abuses its discretion when its rulings on discovery motions are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration.

Syl. Pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996).

■ With regard to the lower court's decision to consolidate the twenty-three civil actions, an abuse of discretion standard of review will also be utilized, explained as follows in syllabus point one of *Holland v. Joyce*, 155 W.Va. 535, 185 S.E.2d 505 (1971):

A trial court, pursuant to provisions of [West Virginia Rules of Civil Procedure Rule] 42, has a wide discretionary power to consolidate civil actions for joint hearing or trial and the action of a trial court in consolidating civil actions for a joint hearing or trial will not be reversed in the absence of a clear showing of abuse of such discretion and in the absence of a clear showing of prejudice to any one or more of the parties to the civil actions which have been so consolidated.

III. Discussion

A. Allegation of Failure to Provide Findings of Fact and Conclusions of Law

■ The Petitioners allege that the lower court failed to provide sufficient findings of fact and conclusions of law supporting its discovery management plan. In syllabus point six of *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 508 S.E.2d 75 (1998), this Court stated as follows:

A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

Based upon the foregoing statement of law, the Petitioners requested the lower court to enter more extensive findings of fact and conclusions of law sufficient to support mean-

---

4. Rule 42(a) of the West Virginia Rules of Civil Procedure provides as follows:

(a) *Consolidation of actions in same court.*— When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. An action is pending before the court within the meaning of this subdivision if it is pending before the court on an appeal from a magistrate.

ingful inquiry into the court's rationale for imposing the discovery management plan in question. The lower court responded to the Petitioners' requests by explaining that sufficient findings of fact and conclusions of law had already been provided by the court within the discovery order and accompanying memoranda. Specifically, the lower court emphasized that it had provided factual findings, under the heading of "Factual basis for this plan" contained in the discovery management plan order. That section provided, in pertinent part, as follows:

(a) This Court specifically finds that the medical and scientific causation issues are the crucial issues. Simply put, this Court finds that if plaintiffs cannot prove their medical and scientific causation case(s), then they have no case at all.

(b) The very breadth of the medical complaints claimed in these cases demand scrutiny of the causation issue. In their Complaints, the plaintiffs have alleged, without any specific detail, "systemic poisoning" of the plaintiffs' "immune, musculoskeletal, and neurological systems and all of their organs."

Section (d) of that order further explained, in pertinent part, as follows:

(d) Further, under any case management plan, each plaintiff will, at some point in time, have to provide scientifically valid evidence in support of their causation theories, for each plaintiff and each disease claimed, and the defendants will, of necessity, have to rebut those causation theories. The Court finds that any prejudice to the plaintiffs caused by a pretrial discovery plan which focuses first on medical and scientific discovery and *Daubert/Wilt* motions, is far outweighed by the need to establish continuing control over these cases and the need for managing these issues.

Under the heading of "Citations to legal authorities in support of this plan," the lower court presented its conclusions of law. The lower court stated that Rule 16(a) of the West Virginia Rules of Civil Procedure permitted the court to establish continuing control and management of the cases and that the two-tiered pretrial discovery mechanism would provide more thorough preparation for both plaintiffs and defendants. Further, the court explained that it had based its discovery decisions upon several cases dealing with management of toxic tort cases containing contested causation and scientific issues.

In denying the Petitioners' Motion to Reconsider on July 17, 2001, the lower court examined the argument that the original nine cases would suffer a disadvantage if they had to await the development of the later cases. The lower court stated: "However, the factual commonality among all twenty three cases is such that the advantages of addressing all cases together outweighs the detriment that might be suffered by the parties who filed earlier."

Based upon our review of the findings of fact and conclusions of law presented by the lower court, we believe that the lower court provided a basis for its decisions in sufficient detail to permit review by this Court. We consequently deny the requested writ of mandamus and proceed to review the lower court's consolidation and discovery management plan.

B. Lower Court's Consolidation of Twenty–Three Plaintiffs for Discovery

The Petitioners contend that the nine original plaintiffs [5] are substantially prepared to defend against dispositive pretrial motions on the issues of damages and causation.[6] They

---

**5.** The first plaintiff filed his civil action in 1996; the remaining eight original plaintiffs filed civil actions in 1997 and 1998. According to the Petitioners' brief, the final fourteen plaintiffs filed their civil actions in 1999. Based upon the time frames during which the original nine plaintiffs filed their cases, those nine plaintiffs were prepared prior to the second grouping of fourteen plaintiffs.

**6.** The Court is cognizant of the parties' expectation that expert testimony issues surrounding admissibility of scientific evidence will be crucial to the pretrial stage of these cases. This Court reminds the litigants of Justice Cleckley's sage comments in *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995):

Under *Daubert/Wilt*, the circuit court conducts an inquiry into the validity of the underlying science, looking at the soundness of the princi-

further contend that because the fourteen more recent plaintiffs are not yet prepared to answer dispositive pretrial motions, the nine original plaintiffs will be prejudiced by the substantial delay which will be encountered while the fourteen new plaintiffs conduct further discovery and prepare for pretrial motions on damages and causation. The Petitioners assert that the inevitable delay, estimated by the Petitioners as approximately two years, will violate their constitutional rights to prompt trial. *See* W.Va. Const. Art. III, § 17 ("[E]very person ... shall have remedy by due course of law; and justice shall be administered without sale, denial or delay"). The Petitioners also emphasize that Rule 1 of the West Virginia Rules of Civil Procedure provides that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

■■■■■ The Respondents assert that because all twenty-three cases arise from the same type of chemical exposure, consolidation for discovery purposes was appropriate under the discretionary policies of Rule 16 of the West Virginia Rules of Civil Procedure[7] and *State ex rel. Appalachian Power Co. v. MacQueen*, 198 W.Va. 1, 479 S.E.2d 300 (1996). Syllabus point one of *Appalachian Power v. MacQueen* provides as follows:

"The trial court, when exercising its discretion in deciding consolidation issues under West Virginia Rules of Civil Procedure 42(a), should consider the following factors: (1) whether the risks of prejudice and possible confusion outweigh the considerations of judicial dispatch and economy; (2) what the burden would be on the parties, witnesses, and available judicial resources posed by multiple lawsuits; (3) the length of time required to conclude multiple lawsuits as compared to the time required to conclude a single lawsuit; and (4) the relative expense to all concerned of the single-trial, multiple-trial alternatives. When the trial court concludes in the exercise of its discretion whether to grant or deny consolidation, it should set forth in its order granting or denying consolidation sufficient grounds to establish for review why consolidation would or would not promote judicial economy and convenience of the parties, and avoid prejudice and confusion." Syllabus Point 2, *State ex rel. Appalachian Power Co. v. Ranson*, 190 W.Va. 429, 438 S.E.2d 609 (1993).

Syllabus point two of *Appalachian Power v. MacQueen* provides: " 'Trial courts have the inherent power to manage their judicial affairs that arise during proceedings in their courts, which includes the right to manage their trial docket.' Syllabus Point 2, *B.F. Specialty Co. v. Sledd*, 197 W.Va. 463, 475 S.E.2d 555 (1996)." Syllabus point three of *Appalachian Power v. MacQueen* provides: "A creative, innovative trial management plan developed by a trial court which is designed to achieve an orderly, reasonably swift and efficient disposition of mass liability cases will be approved so long as the plan does not trespass upon the procedural due process rights of the parties." Consequently, the Respondents contend that the inherent power of the trial court was properly exercised in consolidation of the twenty-three cases and that the plan does not violate the procedural due process rights of the parties.

■■■■ Upon our review of the record, arguments of counsel, and the factors enumerated in *Appalachian Power v. MacQueen*, we conclude that the consolidation of the twenty-

---

ples or theories and the reliability of the process or method as applied in the case. *The problem is not to decide whether the proffered evidence is right, but whether the science is valid enough to be reliable.* When scientific evidence is proffered, the circuit court in its "gatekeeper" role must engage in a two-part analysis in regard to the expert testimony. First, the circuit court must determine whether the expert's testimony reflects "scientific knowledge," whether the findings are derived by "scientific method," and whether the work product amounts to "good science." Second, the circuit court must ensure that the scientific testimony is "relevant to the task at hand."

*Id.* at 523, 466 S.E.2d at 182 (emphasis in original).

7. Rule 16 provides trial courts with guidance regarding pretrial conferences, scheduling, and management of cases, including the control and scheduling of discovery. W.Va.Rule Civ.Pro 16(c)(6). The trial court also has authority to examine the "need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems[.]" W.Va.Rule Civ.Pro. 16(c)(12).

three cases constitutes an abuse of discretion for which issuance of a writ of prohibition is the only effective remedy. The delay in resolution of the original nine plaintiffs' cases, while awaiting the completion of causation and damages discovery for the second group of litigants, imposes a significant burden upon the parties and witnesses. Additionally, comparing the time required to conclude multiple lawsuits to that required to conclude a unitary trial of the first nine,[8] it appears that consolidation for discovery purposes is not an appropriate means to efficiently manage the lower court's docket and provide prompt resolution for the parties.[9]

### C. Reverse Bifurcation

 Prior to presenting our ultimate directives in this case, we are compelled to take notice of the fact that the lower court, contrary to the distinct suggestions of this Court in *Crafton*, ordered discovery to be conducted through the method of reverse bifurcation. Based upon our review of the intricacies of this matter and our conclusion that consolidation of the twenty-three cases constitutes an abuse of discretion, we further order that the trial [10] of the original nine plaintiffs and the subsequent discovery and trial of the remaining fourteen plaintiffs shall be conducted in traditional, unitary style without utilization of the reverse bifurcation method.[11] We find that reverse bifurcation is inappropriate for discovery and trial of these matters. Having examined the record and the progress of these cases, we believe that the lower court was not justified in its conclusion that reverse bifurcation would be effective. In light of the issues to be analyzed and the complexity of the litigation, we believe the management of this discovery and/or trial through the method of reverse bifurcation would result in significant confusion of the complex issues. Further, we do not believe that reverse bifurcation would permit the parties to present evidence in an organized and effective order.

In arriving at this conclusion, this Court has carefully reviewed the lower court's order requiring utilization of the reverse bifurcation method in discovery. We have also considered the effect of our directive that consolidation is inappropriate and that the original nine cases should proceed forthwith. We are not persuaded that the benefits of reverse bifurcation which the lower court

---

8. During oral argument, this Court was informed by counsel for the Petitioners that the remaining discovery in the cases of the original nine plaintiffs would require approximately ten months, based upon the current status of the nine cases and the expected additional medical evaluation and preparation. We anticipate that the parties will prepare for trial as expeditiously as possible, roughly within the time frame referenced during oral argument.

9. We further note that some of the discovery conducted in preparation for trial of the original nine may benefit and hasten discovery in the second grouping of fourteen.

10. Specifically regarding the trial of such issues, syllabus point four of *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC*, 209 W.Va. 318, 547 S.E.2d 256 (2001), provides as follows:

West Virginia jurisprudence favors the consideration, in a unitary trial, of all claims regarding liability and damages arising out of the same transaction, occurrence or nucleus of operative facts, and the joinder in such trial of all parties who may be responsible for the relief that is sought in the litigation.

*Sheetz* found a law firm's contribution claim against out-of-state counsel could proceed based upon that unitary trial principle. *Id.* at 333, 547 S.E.2d at 271.

11. Bifurcation of the damages and liability phases has, under some circumstances, been held to be an abuse of discretion. In *Walker Drug*, for instance, the appellate court held that "[b]ecause of the closely interrelated character of damages and liability in the trespass and nuisance actions, we conclude that the district court's bifurcation of the trial was an abuse of discretion." 972 P.2d at 1245. The *Walker Drug* court also explained:

While bifurcation of trial on the issues of liability and damages is perhaps the most common application of rule 42(b), *see* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2390, at 502 (2d ed.1995), reverse bifurcation is much less common and has been used only rarely in complex asbestos-related litigation. *See, e.g., Campolongo v. Celotex Corp.*, 681 F.Supp. 261, 262 (D.N.J.1988) (suggesting that reverse bifurcation is an "extraordinary" case management technique necessitated by the magnitude of the asbestos caseload). To our knowledge, so drastic a technique has never been employed in Utah. *Id.* at 1245 n. 7. In *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957 (10th Cir.1993), however, the process of reverse bifurcation was approved in an asbestos case where the procedure would save time and money and would not prevent the plaintiffs from developing a history of their exposure to the defendant's product. *Id.* at 964–65.

identified survive under that scenario. We believe, in fact, that the orderly trial of the original nine cases and the discovery necessary to that trial, with respect to issues of liability, causation, and damages, compels the conclusion that trials of both the original nine and the subsequent fourteen should proceed along traditional lines. We therefore prohibit continued use of reverse bifurcation in this case.[12]

## IV. Conclusion

Based upon the foregoing, we conclude that a writ of prohibition is the proper remedy in this matter. As this Court explained in syllabus point four of *Hoover v. Berger,* quoted above, several factors must be examined in determining whether a writ of prohibition should be granted. 199 W.Va. at 14–15, 483 S.E.2d at 14–15, syl. pt. 4. Based upon the application of the *Hoover* factors to the present case, we conclude that the Petitioners have no other adequate means through which to obtain relief from this discovery order. We further find that failure to provide the requested relief will result in damage or prejudice to the Petitioners not correctable on appeal. Additionally, we find that the lower court's order raises an important issue which necessitates resolution by this Court through this writ of prohibition.

Consequently, we grant the requested writ of prohibition as moulded and remand this matter with the following instructions: (1) Preparation for trial of the first nine cases should be permitted to proceed forthwith. In particular, the parties are to be permitted to conduct such lawful discovery regarding liability as may be required and to conclude the causation and damages discovery therein with all deliberate speed. Those nine cases are to be tried, if at all, after the hearing of such dispositive motions as may be presented, in a single unitary trial. (2) As to the remaining fourteen cases, the requirement of reverse bifurcation for discovery purposes shall be set aside, and the cases shall be prepared for a traditional, unitary trial, with discovery of all issues, whether on liability,

causation, damages, to commence within a reasonable time after discovery is completed in the original nine cases. We understood from the Petitioners' oral argument that causation and damages discovery for the fourteen plaintiffs could conveniently begin within six or seven months after our decision herein. We also note that it is likely that substantial discovery completed on the issue of liability for the initial nine cases may be useful and appropriate to one or more of the later fourteen cases.

Writ of Mandamus denied.

Writ of Prohibition granted, as moulded.

Chief Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

---

12. It is abundantly clear that the lower court has devoted considerable time and energy to the management of this case, and this Court is aware and appreciative of the efforts of the lower court to deal effectively with a complex and unique litigation scenario. We are confident of the lower court's continued diligence in directing this litigation as it is remanded for traditional discovery and trial, first for the initial nine plaintiffs and subsequently for the more recent fourteen plaintiffs.