JOHN PRICE ASSOCIATES, INC., a Utah Corporation and McQueen Masonry, Inc., a Utah Corporation, Plaintiffs and Appellants,

v.

UTAH STATE CONFERENCE, BRICK-LAYERS LOCALS NOS. 1, 2 AND 6 AND TILE SETTERS LOCAL NO. 5, unincorporated labor associations and Robert Chivers, its business agent and Charles Rodarte, its secretary, Defendants and Respondents.

No. 16283.

Supreme Court of Utah.

July 10, 1980.

George A. Hunt of Snow, Christensen & Martineau, Salt Lake City, for John Price.

Bruce A. Maak of Maak & Maak, Salt Lake City, for McQueen Masonry, Inc.

1. This grant of an ex parte restraining order was contrary to the specific procedure required in Sec. 34–19–5.

A. Wally Sandack, Salt Lake City, for defendants and respondents.

MAUGHAN, Justice:

Plaintiffs appeal from an order dismissing their complaint for injunctive relief and damages allegedly incurred as a result of union picketing by defendants at a construction site. The judgment of the district court is affirmed. All statutory references are to Utah Code Annotated, 1953, unless otherwise indicated. Costs to defendants.

Plaintiff, John Price Associates, Inc. (Price) was the general contractor engaged by the General Services Administration to construct a building for the United States for the use of the Bureau of Mines, as a metallurgy research center. Plaintiff, McQueen Masonry, Inc. (McQueen), was the masonry subcontractor on the project.

On December 15, 1978, plaintiffs filed a verified complaint and a motion for a temporary restraining order enjoining defendants from picketing on or about the construction site and premises. The trial court granted the motion and issued the temporary restraining order. On the same day, in response to a motion by defendants, the trial court ordered the temporary restraining order be set aside as improperly issued on the ground the matter was preempted by federal labor law.[1] Plaintiffs filed a motion to reinstate the temporary restraining order. Defendants filed a motion to dismiss plaintiffs' complaint. Defendants further filed an affidavit of the business manager of the union, Robert Chivers. The motions were heard on December 26, 1978, and the trial court ordered the complaint dismissed.

In its order the trial court set forth three reasons that it had no jurisdiction to proceed with plaintiffs' action. First, it had no jurisdiction under Utah law to issue a temporary restraining order by virtue of Sec-

tions 34–19–5 and 11, U.C.A., 1953. Second, the court lacked jurisdiction for the reason it was pre-empted by federal labor law (National Labor Relations Act), and the matter was within the exclusive jurisdiction of the National Labor Relations Board (N.L.R.B.) as an activity arguably protected by Section 7 of the N.L.R.A. (29 U.S.C.S., Section 157) or arguably prohibited by Section 8 of the N.L.R.A. (29 U.S.C.S., Section 158). Third, since the court ruled it had no jurisdiction, it further lacked jurisdiction to provide a remedy in damages.

In their verified complaint, plaintiffs alleged neither was a signatory to any union contractual agreements with defendants nor was involved in any negotiations, union voting procedure or other activity or involvement with defendants. Plaintiffs asserted that neither they nor their subcontractors or affiliated entities had a labor dispute with defendants. Plaintiffs alleged, notwithstanding the foregoing, the defendants commenced picketing the project construction site, which was situated on premises owned by the University of Utah and leased to the United States Government. According to the allegations, defendants refused plaintiffs' request to leave the premises and continued their demonstration. Allegedly, the picketing obstructed the traffic flow and continuation of construction, thus jeopardizing the project—completion schedule. If such conduct continued, plaintiffs alleged they would suffer grievous and irreparable injury, in that, unless there were adherence to the completion schedule, the project owner could cancel the contract and declare a default. Such an event would jeopardize both plaintiffs and cause financial ruin. Each day completion was delayed caused plaintiffs to suffer financial damage.

Plaintiffs alleged the picketing was unlawful and improper and did not arise out of a legitimate labor dispute with either the plaintiffs, or their subcontractors, but rather constituted an unlawful secondary boycott against innocent third parties—to wit,

the plaintiffs, their subcontractors, and the G.S.A. In their prayer, plaintiffs sought an injunction restraining defendants from picketing the project and/or the premises and for damages to be established at trial.

The temporary restraining order, initially granted by the trial court, recited that plaintiff would suffer irreparable injury if the order were not issued, viz., progress on the project, being picketed, was stopped, jeopardizing contracts and thereby subjecting plaintiffs to financial losses so extreme as to cause their financial ruin.

In the affidavit of Robert Chivers, filed by defendants, it was stated the premises, which were owned by the University of Utah and leased by the United States Government, were approached by a public road. None of the activities of the union involved a trespass on private property and did not disrupt the traffic flow on and off the premises. The conduct of defendants was at all times peaceful, and the police neither intervened nor were so requested. On December 14, 1978, the union advised the public, at a location in front of the general entrance to the construction site, on the public right of way, that the construction work performed by McQueen was not in accordance with Bricklayer Area Standards. On the following day, Price established a reserve gate, and defendants' activities remained at such gate. Defendants had a dispute only with McQueen over the substandard rates in this area. Defendants did not seek to organize or represent the employees of McQueen, but were interested solely in preserving the negotiated working standards and conditions for bricklayers in the area.

The affidavit further stated plaintiffs had not filed charges with the N.L.R.B., alleging that the union had engaged in unlawful picketing. The activity at the construction site was asserted to be peaceful, non-obstructive and non-violent. It was further claimed, if the court restrained the activities of the union, all journeymen brick-layers and tile-setters in the area

would be injured by their inability to inform the public of their dispute.

■ Plaintiffs, on appeal, concede under the *Garmon* doctrine, the trial court did not have jurisdiction to enjoin peaceful picketing, which plaintiffs claimed constituted an unlawful secondary boycott, or to award damages for an alleged tortious interference with their contracts. Plaintiffs contend under the exception to the *Garmon* doctrine as set forth in *Sears* case, infra, the trial court erred in its ruling that federal labor law had pre-empted its jurisdiction.

The *Garmon* doctrine is derived from the rulings in *San Diego Building Trades Council v. Garmon* :[2]

"When it is clear or may fairly be assumed that the activities which a state purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield."

\*  \*  \*  \*  \*  \*

"When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."[3]

In *Garmon*, the court held, since the N.L.R.B. had not adjudicated the status of the conduct for which the state court had sought to give a remedy in damages, and since such activity was arguably within the compass of Section 7 or Section 8 of the act, the State's jurisdiction was displaced.[4]

■ In their verified complaint plaintiffs alleged defendants' picketing was an unlawful secondary boycott, which would constitute an unfair labor practice prohibited by Section 8(b)(4)(D) of the National Labor Relations Act. According to defendants, the union's peaceful primary picketing to protest wage rates and working conditions below established area standards arguably constituted protected activity under Section 7.[5] The issues as framed by the parties fell clearly within the ambit of the *Garmon* doctrine, viz., the jurisdiction of the National Labor Relations Board is exclusive and pre-emptive as to activities that are arguably subject to regulation under Section 7 or Section 8 of the National Labor Relations Act (29 U.S.C.S., Sec. 157, Sec. 158).

Plaintiffs contend the exception to the principles of pre-emption of the *Garmon* doctrine as set forth in *Sears Roebuck and Co. v. San Diego District Council of Carpenters*[6] (Sears case) are applicable, and the district court had jurisdiction to enjoin trespassory picketing by defendants.

In the *Sears* case the Union established a picket line on Sears private property, i.e., the pickets patrolled either on the privately owned walkways next to the building or in the parking area a few feet away. Sears filed a verified complaint seeking an injunction against the continuing trespass. The trial court entered a temporary restraining order enjoining the Union from picketing on Sears' property. The Union removed the pickets to the public sidewalk. Subsequently, upon hearing, the trial court entered a preliminary injunction. The California Court of Appeals affirmed. The Supreme Court of California reversed, reasoning the picketing was both arguably protected by Section 7 and arguably prohibited by Section 8 and therefore state jurisdiction was pre-empted under the *Garmon* guidelines.

The United States Supreme Court reversed and ruled, in the case of trespassory

---

**2.** 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959).

**3.** 359 U.S. 245, 79 S.Ct. 199.

**4.** 359 U.S. 246, 79 S.Ct. 780.

**5.** *International Longshoremen's Association v. Ariadne Shipping Company*, 397 U.S. 195, 200–201, 90 S.Ct. 872, 874–875, 25 L.Ed.2d 218 (1970).

**6.** 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).

picketing, a state court has jurisdiction to determine whether the picketing is protected under Section 7 of the N.L.R.A. or may be enjoined under state trespass laws. In other words, some violations of state trespass laws may be protected by Section 7 of the federal Act.[7]

Picketing, which is protected by Section 7 in the absence of a trespass, may by its trespassory nature forfeit its protected status. It is a question of accommodation of Section 7 rights and private property rights, which the state courts may evaluate to determine whether certain trespassory activity is protected.[8] If the activity be deemed unprotected, the state court may apply its trespass laws and enjoin the activity.[9]

Plaintiffs contend the trial court had jurisdiction to undertake an analysis in accordance with the *Sears* case. This argument is erroneous. First and foremost, plaintiffs did not have a possessory interest in the real estate. Trespass is a possessory action. The gist of an action of trespass is infringement on the right of possession. In order to maintain the action, the plaintiff must, at the time of the trespass, have been in actual or constructive possession of the land on which the acts of trespass were committed.[10] The complaint states the premises were owned by the University of Utah and were leased to the United States.

Plaintiffs did not have a possessory interest in the realty so as to entitle them to maintain a possessory action.

Secondly, in the *Sears* case, the court noted the scope of the controversy before the state court was limited, for Sears did not claim the picketing itself violated any state of federal law, viz., that it was arguably a prohibited activity under Section 8 of the N.L.R.A. Sears simply sought to remove the pickets from its property to the public walkways, and the injunction of the trial court was confined strictly to the relief sought. The issue submitted to the state court involved the location of the picketing, and not the legality of its objectives.[11]

The Court stated the critical inquiry is whether the controversy presented to the state court is identical to or different from that which could have been, but was not presented to the Labor Board. It is only in the former situation a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.[12] Sears only challenged the location of the picketing, and the issue of whether the activity had an objective proscribed by federal law was irrelevant to the state claim. Thus the state court's adjudication of Sears' trespass claim would not create a realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices.[13] If Sears had charged an unfair labor practice, the Labor Board's concern would have been the objective and not the location of the challenged picketing.[14]

In the instant case, the controversy plaintiffs presented to the trial court was identical to that which could have been but was not presented to the N.L.R.B. Plaintiffs alleged an unfair labor practice, an unlawful secondary boycott, which is prohibited

**7.** 436 U.S. 204, 98 S.Ct. 1761.

**8.** 436 U.S. 204–207, 98 S.Ct. 1761–1763.

**9.** See *Shirley v. Retail Store Employees Union*, 225 Kan. 470, 592 P.2d 433 (1979), wherein it was held that the picketing, although trespassory in nature, was clearly protected under Sec. 7 of the N.L.R.A.

**10.** 75 Am.Jur.2d, Trespass, Sec. 22.

**11.** 436 U.S. 185, 98 S.Ct. 1751.

**12.** 436 U.S. 197, 98 S.Ct. 1757.

**13.** 436 U.S. 198, 98 S.Ct. 1758.

**14.** Footnote 31 at 436 U.S. 201, 98 S.Ct. 1759.

conduct under Section 8 of the N.L.R.A. The temporary restraining order enjoined all picketing of the construction site and premises. The controversy presented to the trial court involved the objectives of the challenged picketing and not its location. By their pleadings plaintiffs did not seek to confine the picketing to the public way, but to enjoin it completely. Such a controversy is within the exclusive, primary jurisdiction of the N.L.R.B., and the trial court did not err in its ruling that state court jurisdiction was pre-empted by Federal labor law.

[redacted] Plaintiffs further contend the trial court erred in its ruling that Utah's Little Norris-La Guardia Act, Chapter 19, Title 34, denied jurisdiction to enjoin the picketing. Plaintiffs' claim of error is predicated solely on their allegation they had a possessory interest in the realty sufficient to sustain relief for trespass. Thus, they urge the trial court should not have denied jurisdiction until it had held a hearing and found no trespass occurred.[15] Since plaintiffs had no possessory interest in the realty as discussed, ante, their claim of error is without merit.[16]

CROCKETT, C. J., and HALL, WILKINS and STEWART, JJ., concur.

[redacted]

**15.** Sec. 34–19–2, provides, no court shall have jurisdiction to issue any restraining order which prohibits persons from "(5) Giving publicity to and obtaining or communicating information regarding the existence of or the facts involved in any dispute, whether by advertising, speaking, or patrolling any public street or any place where any person or persons may lawfully be, without intimidation or coercion, or by any method not involving fraud, violence, breach of the peace, or threat of same; . . ."

**16.** Before the trial court plaintiffs urged a "labor dispute" was not involved as that term is used in Secs. 34–19–5, 11, U.C.A., 1953. Owing to the broad definition of that term in Sec. 34–19–11, plaintiffs apparently abandoned their argument that Chapter 19, Title 34, and its anti-injunction provisions did not apply to the dispute between plaintiffs and defendants.