WALKER DRUG COMPANY, INC., a Utah corporation, Jack and Lorraine Walker, Plaintiffs and Appellants,

v.

LA SAL OIL COMPANY and Rio Vista Oil, Ltd., Defendants and Appellees.

No. 970270.

Supreme Court of Utah.

Dec. 22, 1998.

See also, 902 P.2d 1229.

J. Kamper Will, Dana L. Eismeier, Englewood, Colorado, J. Michael Bailey, Salt Lake City, for plaintiffs.

H. James Clegg, Julianne P. Blanch, Salt Lake City, for defendant Rio Vista.

J. Michael Hansen, Claudia F. Berry, Salt Lake City, for defendant La Sal.

STEWART, Justice:

Walker Drug Co., Inc., Jack Walker, and Loraine Walker (collectively "the Walkers") appeal from the trial court's final judgment on their complaint alleging nuisance and trespass. The Walkers complain that the trial court misinterpreted our prior opinion in this case, *Walker Drug Co. v. La Sal Oil Co.,* 902 P.2d 1229 (Utah 1995) (*Walker Drug I*), and as a result excluded evidence relevant to their claims, declined to instruct the jury as they requested, and directed the jury's verdict against them with respect to stigma damages. They also appeal the court's entry of partial summary judgment and its order bifurcating trial. We affirm in part, reverse in part, and remand for a new trial.

## I. FACTS

The complaint alleges that gasoline migrated underground from service stations owned by defendants La Sal Oil Company and Rio Vista Oil, Ltd., to properties owned during the relevant time by either Walker Drug or Jack Walker or by them both, or with Loraine Walker, or with entities not parties to this suit. Collectively, these properties comprise the majority of one city block along Main Street in Moab, Utah. There are three relevant properties: the Drugstore Property at the south end of the block, the Liquor Store Property, which attaches to the Drugstore Property to form a small strip mall, and the City Market Property to the north. In general, Jack Walker owns or has owned a controlling interest in the land underlying each property. By contrast, Walker Drug, a corporation wholly owned by Jack Walker, owns the majority of the Drugstore Building, and Loraine Walker and Jack Walker jointly own the Liquor Store Building. Jack Walker owned the City Market Building until it was demolished. When tenants vacated the City Market Building in 1990, Jack Walker had hoped to renovate the building for an expanded Walker Drug drugstore. Despite all efforts, however, he was unable to obtain financing collateralized by any other property on the block in which he owned an interest. As a result, he tore the building down and sold the land on which it sat.

The Walkers allege that significant quantities of gasoline leaked from tanks at defendants' service stations and contaminated the groundwater and soil of the Drugstore and Liquor Store Properties. This contamination, they claim, damaged the value of all three properties and impinged upon their ability to use their properties as collateral for a loan. Environmental studies conducted as early as 1986 document extensive contamination. According to the record, the service stations are upgradient from the Walkers' properties, and leaked gasoline from the stations has migrated downward with the natural groundwater across the Walkers' properties toward the nearby Colorado River. The Walkers contend that not all of this leaked gasoline immediately washed through their properties. Rather, they assert that much of the gasoline was sorbed onto particles of soil at the leak cites and along the groundwater's path, creating a chemical "smear zone." They argue that whenever the water table rises, sorbed gasoline dissolves and new contamination is released into the groundwater to move downgradient. In this manner, gasoline sorbed to the soil underlying the service stations continues to be released onto the Walkers' properties many years after the initial leakage.

The Walkers brought suit against La Sal and Rio Vista on March 1, 1993, alleging trespass, nuisance, and strict liability claims. La Sal and Rio Vista denied liability and argued that the Walkers' trespass and nuisance claims were barred by the three-year statute of limitations set forth in Utah Code Ann. § 78–12–26(1) and that the strict liability claim was barred because their activities in operating service stations were not abnormally dangerous. The trial court agreed and granted summary judgment. On appeal, this Court affirmed the district court's grant of summary judgment as to the strict liability claim but reversed as to the trespass and nuisance claims. *See Walker Drug I*, 902 P.2d at 1234. The Court held that if the Walkers could show the trespass and nuisance were continuing, as opposed to permanent, the claims would not be time-barred but that recovery would be limited to damages sustained within the three-year period preceding the Walkers' filing of the complaint. *See id.* at 1232. The Court further held that the Walkers could recover damages for any permanent property injury (i.e., the diminution of their properties' value) as well as any temporary loss of use or remediation costs that arose from a continuing trespass or nuisance within the three year-limitations period. *See id.* at 1233.

On remand, it was the Walkers' burden to prove that the migrating gasoline was a continuing trespass or nuisance and that new gasoline was released onto their properties during the limitations period resulting in damages. Defendants moved for partial summary judgment to dismiss the Walkers' claims regarding the City Market Property because that property had not itself been contaminated. The trial court granted the motion, holding that each of the Walkers' properties was historically distinct and that recovery could be had only for properties actually contaminated.[1] Defendants also moved for reverse bifurcation of trial so that the jury could decide the question of dam-

ages before evidence of liability would be presented. The court also granted this motion, noting its discretion under rule 42(b) of the Utah Rules of Civil Procedure and finding that the primary controversy between the parties was whether in fact the Walkers sustained any damage from the purported continuing trespass or nuisance during the limitations period.

The Walkers sought to introduce evidence at trial detailing the damages they allegedly sustained. According to the Walkers, the trial court narrowly construed the language of *Walker Drug I* in requiring substantial proof that the new trespass and nuisance caused the damages complained of. The court screened the testimonies of several of the Walkers' witnesses and refused to submit the videotaped testimonies to the jury. In particular, the court excluded all evidence of stigma damages because, in its view, the Walkers had not shown that the damages "arose" during the limitations period as *Walker Drug I* required. *See id.* at 1233. The court ultimately directed the jury's verdict with regard to both stigma damages and loss of business damages.[2] The only element of damages left for the jury to consider was the cost of remediating the migrating gasoline. It had been stipulated during the damages phase of trial that while new gasoline migrated onto the Walkers' properties during the limitations period, constituting a continuing trespass or nuisance, self-remediation of pre-existing gasoline contamination continued such that overall contamination levels on the properties decreased. Accordingly, the jury declined to award damages for the cost of remediation.

On appeal, the Walkers challenge the trial court's entry of partial summary judgment and its granting of the motion for reverse bifurcation. They also challenge the court's improper evidentiary rulings, directed verdict respecting stigma damages, and erroneous jury instructions that resulted from its

---

1. Summary judgment was originally granted as to the Liquor Store Property as well. By stipulation of the parties, however, that judgment was vacated.

2. The directed verdict respecting loss of business damages is not challenged on appeal.

adopting a misguided interpretation of *Walker Drug I*. We address each contention in turn.

## II. SUMMARY JUDGMENT

■ A challenge to a summary judgment presents solely a question of law that we review for correctness. *See V–1 Oil Co. v. Utah State Tax Comm'n*, 942 P.2d 906, 910 (Utah 1996). We assess only "whether the trial court erred in applying the governing law and whether the trial court correctly held that there was no disputed issues of material fact." *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989). In this case, evidence was undisputed that the soils and groundwater underlying the City Market Property had not been contaminated by the gasoline leaked from defendants' service stations. The Walkers complain, however, that the district court improperly held that the City Market Property, the Drugstore Property, and the Liquor Store Property were legally distinct, mandating a dismissal of the trespass and nuisance claims regarding the City Market Property. They argue that the court should have considered the parcels as one contiguous tract of land so that contamination of a portion of the tract would amount to contamination of the whole, including the City Market parcel.

In its order granting defendants' motion for partial summary judgment, the trial court found "no serious question that each of the three parcels has historically been treated as economically separate and distinct from the other." Even reviewing the facts in the light most favorable to finding a material issue of fact, *see Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993), we agree.

The Walkers assert that Jack Walker referred to the parcels as one tract. This contention amounts to little more than Mr. Walker's subjective conclusion that his prop-

erties should be treated as one unit, i.e., his shopping center.[3] The objective facts are all to the contrary: each of the properties is separately assessed for tax purposes; each has a different title history; each was acquired at a separate time and through separate business ventures; and, finally, each has had distinct and separate improvements constructed thereon. We agree that there is no material factual dispute regarding the status of these properties. The legal conclusion that they are separate parcels for legal purposes is sound.

■ We also agree with the trial court's determination that defendants were entitled to judgment as a matter of law. The essential element of trespass is physical invasion of the land; "[t]respass is a possessory action." *John Price Assoc., Inc. v. Utah State Conf., Bricklayers Locals Nos. 1, 2 & 6*, 615 P.2d 1210, 1214 (Utah 1980) ("The gist of an action of trespass is infringement on the right of possession."); *see also O'Neill v. San Pedro, L.A. & S.L.R. Co.*, 38 Utah 475, 479, 114 P. 127, 128 (1911) (stating that trespass is a "wrongful entry ... upon the lands of another"); Restatement (Second) of Torts § 158 (1977). Because there was no evidence that gasoline contamination reached the City Market Property, defendants cannot, as a matter of law, be held liable for trespass.

■ Similarly, a claim of private nuisance requires proof of a substantial and unreasonable interference with the private use and enjoyment of another's land. *See Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741, 744–45 (1971); *Turnbaugh v. Anderson*, 793 P.2d 939, 942 (Utah Ct.App. 1990). While nuisance "is not contingent upon whether [a] defendant physically impinged on plaintiff's property," *Exxon Corp. v. Yarema*, 69 Md.App. 124, 516 A.2d 990, 1002 (1986),[4] it is undisputed that the non-trespassory interference must be "signifi-

---

**3.** The Walkers cite Jack Walker's trial testimony as evidence for this contention. This testimony was not available to the trial court when considering the motion for summary judgment. Rather, in his deposition testimony, which was available to the trial court, Jack Walker described the parcels as separate.

**4.** In *Yarema*, the local health department forbade the owners of land adjacent to property contaminated by leaked gasoline from using their uncon-

cant." W. Page Keeton, *Prosser and Keeton on Torts* § 88, at 627 (5th ed.1984) [hereinafter Keeton].

■ In this case, the Walkers' complaint alleges that fears arising from the contamination on the Drugstore and Liquor Store properties prevented Jack Walker from using the City Market Property as collateral to secure a mortgage loan. This assertion, however, is not sufficient as a matter of law to support a nuisance claim.[5] The great majority of cases, with which we agree, hold that unsubstantiated fears of third persons regarding the contamination of an *adjacent* property are not the kind of "substantial" and "significant" interference with a landowner's use and enjoyment of his property so as to allow recovery for nuisance. *See, e.g., Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 487 N.W.2d 715, 721 (1992); *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir.1993); *Adams v. Star Enters.*, 51 F.3d 417, 423 (4th Cir.1995); *O'Neal v. Department of Army*, 852 F.Supp. 327, 336–37 (M.D.Pa.1994); *Santa Fe Partnership v. ARCO Prods. Co.*, 46 Cal.App.4th 967, 54 Cal.Rptr.2d 214, 224 (1996). The partial summary judgment against plaintiffs is accordingly affirmed.

## III. BIFURCATION

■ The Walkers next contend that the trial court erred in ordering that the issues of liability and damages be bifurcated and tried in reverse order. Rule 42(b) of the Utah Rules of Civil Procedure gives the trial court "considerable discretion" to administer the business of its docket and determine how a trial should be conducted. *See Slusher v. Ospital*, 777 P.2d 437, 441 (Utah 1989). We will not disturb the trial court's bifurcation order unless the trial court abused its discretion. *See King v. Barron*, 770 P.2d 975, 976 (Utah 1988).

■ Rule 42(b) permits a trial court, "in furtherance of convenience or to avoid prejudice," to order a separate trial of "any claim" or "any separate issue." Regardless of convenience, however, an order to bifurcate trial "is an abuse of discretion if it is unfair or prejudicial to a party" or if "the issues are [not] clearly separable." *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964 (10th Cir.1993) (interpreting Fed.R.Civ.P. 42, which is identical to the Utah rule). The Walkers contend that the district court's bifurcation and reverse order of trial prejudiced them. We agree. We hold that the issue of damages presented to the jury during the first phase of the trial was not separable from the issue of defendants' liability under the trespass and nuisance claims asserted as to avoid unfairness.

■ While proof of damages is not required for a plaintiff to establish liability in an action for trespass, *see* Keeton § 13, at 70 & n. 28, 75 (citing *Thackery v. Union Portland Cement Co.*, 64 Utah 437, 231 P. 813 (1924)), the amount of damages recoverable for trespass, because of the nature of the tort, is integrally related to the extent of the defendant's interference with both the land and the plaintiff's possessory interests. The plaintiff's recovery can include compensation for diminution in the land's value and compensation for any personal or property injury that resulted from the encroachment on the land. *See id.* § 13, at 76; 1 David A. Carpenter, et al., *Environmental Dispute Handbook: Liability and Claims* § 4.5 (1991); Dan B. Dobbs, *Law of Remedies* § 5.5, at 344–45 (1973) [hereinafter Dobbs]. To prove

---

taminated ground water, constructing improvements on their land, or selling the land even at a reduced price. Thus, the owners' use and enjoyment of the land was substantially impaired by the leak, and recovery for the injury was sustained. *See id.* at 1005.

5. Even if we were to hold that negative public perception about uncontaminated property is sufficient to support a claim of nuisance, the trial court's error would be harmless. Jack Walker testified that he later successfully offered a portion of the City Market Property, apart from the Drugstore and Liquor Store Properties, as collateral for a loan to build an improvement on the property before he sold it. He also sold the City Market Property for a price substantially above its appraised value.

these types of damages, a plaintiff must prove the extent of the defendant's invasion and the gravity of the interference with the plaintiff's possessory rights, facts which also establish liability. As discussed above, the essential element of a claim for trespass is the invasion of the plaintiff's property by the defendant. *See John Price Assoc.*, 615 P.2d at 1214.

■■■■ The determination of liability under a claim of private nuisance requires proof of (1) the existence of injury to the plaintiff's use and enjoyment of his property and (2) an injury that is both "substantial and unreasonable." *See Turnbaugh*, 793 P.2d at 942; *see also* Keeton § 88, at 626. A "substantial" injury is a "significant" injury—"a harm of importance, involving more than a slight inconvenience or petty annoyance." Gerald W. Boston & M. Stuart Madden, *Law of Environmental and Toxic Torts* 59 (1994). The assessment of whether an injury is unreasonable requires the finder of fact to evaluate, among other things, the severity of the harm vis-a-vis its social value or utility. *See* Keeton § 88, at 629–30. Evidence concerning the degree of a defendant's interference in the use and enjoyment of the plaintiff's land and the reasonableness of the interference in the context of wider community interests controls the amount of damages recoverable once liability is established.[6]

■■■■ Because the issues of damages and liability were not clearly separable in this case, the bifurcation of the trial inescapably resulted in jury confusion that prejudiced plaintiffs and undermined the fairness of trial. The trial court's discretion under rule 42(b) to improve the efficiency or convenience of trial must always yield to its more fundamental duty to ensure that trial be fair and impartial. *See Martin v. Bell Helicopter Co.*, 85 F.R.D. 654 (D.Colo.1980). Because of the closely interrelated character of damages and liability in the trespass and nuisance actions, we conclude that the district court's bifurcation of the trial was an abuse of discretion.[7]

## IV. STIGMA DAMAGES

■■■■ In *Walker Drug I*, we held that the Walkers could recover damages for both permanent and temporary injury arising from defendants' trespass and nuisance if they could show that the alleged trespass and nuisance were continuing rather than permanent. *See* 902 P.2d at 1232–33. We also held that recovery would be "limited to damage sustained during the three years prior to the filing of [the] complaint." *Id.* at 1232. On remand, the parties stipulated that the alleged trespass and nuisance were continuing in order to allow proof of damages during the first phase of the reverse bifurcated trial. On appeal, the Walkers contend that the trial court misinterpreted our limitation on recovery and required extraordinary proof that the continuing trespass or nuisance proximately caused the alleged damages. Indeed, with regard to stigma damages, the court excluded evidence from two witnesses showing a decrease in the market value of the Drugstore Property because, in its view, the witnesses could not demonstrate with sufficient precision that any decrease resulted during the limitations period. We conclude that, notwithstanding the standard of causa-

6. Bifurcation of a trial can seriously interfere with the proper adjudication of closely related issues. Furthermore, bifurcation does not allow the jury to award nominal damages in the event that substantial damages are not proved. *See* Model Utah Jury Instruction, Civil 4.13 (1993) (citing *Henderson v. For–Shor Co.*, 757 P.2d 465, 471 (Utah Ct.App.1988)).

7. While bifurcation of trial on the issues of liability and damages is perhaps the most common application of rule 42(b), *see* 9 C. Wright & A.

Miller, *Federal Practice and Procedure* § 2390, at 502 (2d ed.1995), reverse bifurcation is much less common and has been used only rarely in complex asbestos-related litigation. *See, e.g., Campolongo v. Celotex Corp.*, 681 F.Supp. 261, 262 (D.N.J.1988) (suggesting that reverse bifurcation is an "extraordinary" case management technique necessitated by the magnitude of the asbestos caseload). To our knowledge, so drastic a technique has never been employed in Utah.

tion imposed by the trial court,[8] the court abused its discretion in excluding the testimony. We further conclude that the court articulated an inaccurate measure of stigma damages.

■ "Typically, the measure of damages in trespass and nuisance cases involving 'permanent' [or indefinite] injury has been the diminished market value of the property," plus consequential losses to the use of the land or from discomfort or annoyance to the possessor. L. Neal Ellis, Jr., & Charles D. Case, *Toxic Tort and Hazardous Substance Litigation* § 6–5(a) (1995) [hereinafter Ellis & Case]. By contrast, damages from "temporary" injury, i.e., injury that is remediable,[9] typically include compensation for the cost of remediation or repair to the property or the property's diminished rental or use value during the period in which the injury persists, plus consequential damages. *See id.;* Dobbs § 5.4, at 336.

■ Stigma damages are a facet of permanent damages, and recovery for stigma

damages is compensation for a property's diminished market value in the absence of "permanent 'physical'" harm. Ellis & Case § 6–5(b), at 156. This Court has not assessed the availability of stigma damages in any prior case.

A majority of courts from other jurisdictions, however, allows recovery when a defendant's trespass or nuisance has caused some *temporary* physical injury to the property but, despite the temporary injury's remediation, the property's market value remains depressed. *See id.; In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 797–98 (3d Cir.1994). Thus, stigma damages compensate for loss to the property's market value resulting from the long-term negative perception of the property in excess of any recovery obtained for the temporary injury itself. *See id.* Were this residual loss due to stigma not compensated, the plaintiff's property would be permanently deprived of significant value without compensation.[10] *See id.*

■ We find the majority position convincing. Stigma damages are therefore re-

8. The Walkers' contention regarding the standard for proving causation is less than clear. To recover for trespass or nuisance, a plaintiff must draw a causal connection between contamination occurring within the limitations period and a decrease in value to the affected property. Otherwise, courts would compensate, in the name of trespass or nuisance, for mere market fluctuations in the general real estate arena. The trial court was correct in discerning the importance of that causal nexus from our prior opinion. *Walker Drug I,* however, did not state the specificity with which causation must be shown. The Court stated simply that a plaintiff must have "suffered" or "sustained" an alleged permanent injury during the applicable limitations period. 902 P.2d at 1232. In most instances, this causal connection is shown through well-established principles of proximate cause. *But see* Keeton § 13, at 76–77 (noting that frequently defendants in trespass actions have been liable for indirect and unforeseeable consequences of their conduct while trespassing: "It is important to realize that those who use another's land without permission may justifiably have 'risks of losses' allocated to them far beyond those normally imposed when liability is imposed on a negligence theory. So-called proximate cause rules adopted for fixing limits to liability for negligence are not necessarily applicable to trespasses."). We decline to decide this issue in this case.

9. Whether the trespass or nuisance is continuous or permanent is a different question from wheth-

er the resulting injury to the land or to the possessor's interests in the land is temporary or permanent. We deal only with the quality of the *injury* in this appeal. A continuing trespass or nuisance—both stipulated to have occurred for purposes of the damages calculation below—may cause either a permanent or a temporary injury. Ultimately, the damages recoverable at trial will depend on the nature of both the trespass or nuisance and the injury. *See generally* Dobbs §§ 5.1, et seq., 310–48.

10. A minority of courts allow recovery for stigma damages regardless of any temporary physical harm to the property. Such a position is incompatible with our holding above that an action for nuisance cannot be sustained when based on unsubstantiated fears by third parties about contamination on *surrounding* properties. *Cf., e.g., Berry,* 989 F.2d at 829; *Adams,* 51 F.3d at 423; *Adkins,* 487 N.W.2d at 721. As we noted above, however, an action for nuisance may be sustained in the absence of physical invasion to the property if damages are sufficiently "substantial" and "unreasonable." In *Yarema,* 516 A.2d at 1005, landowners were prohibited from using their ground water, constructing improvements on their land, or selling the land even at a reduced price even though their land had not itself been contaminated. *See supra* note 4. It may be that such facts could justify an award of stigma damages as well, despite the lack of physical damage to the property. We will decide that issue in the appropriate case, however.

coverable in Utah when a plaintiff demonstrates that (1) defendants caused some temporary physical injury to plaintiff's land and (2) repair of this temporary injury will not return the value of the property to its prior level because of a lingering negative public perception.

■ In this case, the Walkers seek stigma damages for an alleged decrease in the market value of the Drugstore Property. It was stipulated during the damages phase of trial that the Drugstore Property was contaminated by migrating gasoline from defendants' storage tanks and that this contamination was abatable. Thus, it was not disputed that a temporary injury was inflicted on the property.

The Walkers then sought to prove at trial that the market value of the Drugstore Property was diminished by stigma notwithstanding remediation of the migrating gasoline and that the stigma arose or worsened during the three-year limitations period. To that end, they called two witnesses: an expert, Mr. David Van Drimmelen, to quantify the diminished market value, and a fact witness, Ms. Georgia Hamblin, to testify from her experience as a Moab real estate agent and appraiser that public perception of contaminated properties significantly worsened in Moab after March 1, 1990. The district court videotaped the testimony of both witnesses outside the jury's presence and concluded thereafter that Ms. Hamblin had not shown clearly enough that the Drugstore Property was stigmatized by adverse public perception during the limitations period. As a result, the court ruled that all evidence regarding stigma damages was inadmissible, and it excluded the testimony of both Mr. Van Drimmelen and Ms. Hamblin. It also directed a verdict with respect to stigma damages.

We disagree with the trial court that Ms. Hamblin's testimony did not adequately state facts from which the jury could have found causation. In her testimony, Ms. Hamblin stated that she knew about the gasoline contamination of the Walkers' property during the 1980s and admitted it was likely that a well-informed buyer during that time period would also have known about the contamination. Nevertheless, she testified that public perception regarding the effect of environmental contamination on property values in Moab changed dramatically after March 1, 1990, the beginning of the limitations period in this case. In particular, she testified from her experience that buyers were much more sophisticated after 1990 about environmental contamination. They asked detailed questions about possible contamination and gave contamination more consideration in assessing value, whereas during the 1980s contamination was viewed as relatively unimportant. She also referred to regulatory changes occurring after 1990 that increased the effect of environmental contamination on property values. It was not until 1993 that real estate agents were required to disclose to prospective buyers land conditions that affected a property's environmental purity.

While Ms. Hamblin did not testify about changes in public perception relating specifically to the Drugstore Property after 1990, it can clearly be inferred from her testimony that a potential buyer after March 1, 1990, would have viewed the contaminated property much more cautiously than would a buyer before then. This is true notwithstanding the undisputed fact, recognized by Ms. Hamblin, that overall contamination levels on the Drugstore Property had decreased since 1990. Because the Drugstore Property was not for sale during the relevant time period, no witness would likely have been able to testify, with the degree of specificity that the trial court apparently required, about the stigma attributed to the property by potential buyers.

■ The fact that Ms. Hamblin could not precisely detail the amount by which stigma to the Drugstore Property allegedly arose or increased during the limitations period does not exclude her testimony. While evidence must provide a sufficient basis for estimating damages with reasonable certainty, we have held that "evidence ... will be deemed suffi-

cient to establish a basis for an award ... [when] the plaintiff has provided the best evidence available to him under the circumstances." *Penelko, Inc. v. John Price Assoc., Inc.*, 642 P.2d 1229, 1232 (Utah 1982); *see also Monter v. Kratzers Specialty Bread Co.*, 29 Utah 2d 18, 504 P.2d 40, 43 (1972) (stating that the difficulty of calculating damages does not prevent an injured party from recovery). Our review of the evidence confirms that Ms. Hamblin's testimony was the best evidence available for proving stigma damages given the circumstances. We therefore hold that Ms. Hamblin's testimony, and thus Mr. Van Drimelen's testimony, should have been admitted and that the issue of stigma damages should have been submitted to the jury.

 Having reached this conclusion, it is appropriate for the purpose of the remand to state some guidelines regarding the appropriate measure of stigma damages. As a general rule, damages for permanent injuries are measured by "the difference between the value of the land before the harm [or at the beginning of the limitations period] and the value after the harm." Restatement (Second) of Torts § 929(1)(a) (1977). With respect to stigma damages, however, such a test may be inaccurate in that it does not acknowledge the role stigma damages plays in compensating the plaintiff for lost market value in excess of the cost of remediating a *temporary* injury to the property. When a permanent injury to property resulting from trespass or nuisance is physical, that injury cannot be repaired. Thus, the value of the injured property will not change after the injury is incurred, and it is accurate to assess damages by subtracting the value of the land at the date on which the complaint was filed from the land's value before the harm. When, however, physical injuries to the land are temporary, they are repairable by their nature. And when the injuries are repaired,

value is restored to the injured property. Measuring damages only by reference to two dates at the outer boundaries of the events at issue does not account for the fluctuating value of such properties, and could leave the plaintiff uncompensated for repair costs incurred during the limitations period. Stigma damages, although permanent in nature, are recoverable in conjunction with, and measured against, these temporary damages.[11]

Compensation is not by averages, and in this case, the level of pre-existing contamination is irrelevant to compensating the Walkers for market value they lost due to stigma after March 1, 1990. The Walkers are entitled to recover for all damage caused by new gasoline migrating onto the property during the limitations period, regardless of the existence of pre-existing contamination. Were it otherwise, the distinction between permanent and continuing trespass or nuisance we noted in *Walker Drug I* would be meaningless. The aim of compensation under trespass or nuisance should always be to compensate the plaintiff fully for injuries to the land or his use and enjoyment thereof caused by the defendant's actions. *See* Dobbs § 5.1, at 310–11.

In sum, we conclude that Ms. Hamblin's testimony stated sufficient facts from which the jury could have found the requisite causal relationship between the alleged nuisance and trespass to the Drugstore Property and any stigma associated with the property. As a result, we hold that the trial court erred in refusing to allow Ms. Hamblin and Mr. Van Drimmelen to testify. We also hold that the court erred as a matter of law in directing the jury's verdict with respect to stigma damages.

## V. INTERPRETATION OF *WALKER DRUG I*

Finally, the Walkers allege that the lower court misinterpreted *Walker Drug I* regard-

11. We do not imply that a decrease in market value due to negative public perception or stigma cannot accompany permanent physical injuries. To the contrary, when physical injuries are permanent, the general two-point measure of damages accommodates the stigma aspect of market

value. "Stigma damages" is a defined term, however, and as used in this opinion, only compensates indefinitely lost market value due to negative public perceptions caused by temporary physical injuries.

ing limitations on the recovery of damages and thereby required a higher standard of proof of causation for proving all damages, particularly stigma and cost of remediation damages. They assert that in addition to spawning erroneous evidentiary rulings and a directed verdict regarding stigma damages, this misinterpretation resulted in the court's refusing to adopt the Walkers' proposed jury instructions and caused the Walkers to alter their presentation of the evidence significantly.

With respect to the jury instructions, the Walkers fail to demonstrate how the court's refusal to adopt their proposed jury instructions prejudiced them. Instead, the proffered instructions did not vary in any relevant way from the rather vague instructions given to the jury regarding causation. Any error committed by the court in refusing to accept the proposed instructions was harmless. Furthermore, the Walkers do not set forth any case law showing that they are entitled to a new trial because counsel had to adjust the manner of its evidentiary presentation due to a trial court's adverse understanding of controlling law. We will reverse the trial court only if its interpretation of the law results in a misapplication of the law to established facts or works to prevent relevant facts from being admitted. *See Bitzes v. Sunset Oaks, Inc.*, 649 P.2d 66, 71–72 (Utah 1982).

## VI. CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed. The order granting partial summary judgment is affirmed. The case is remanded for a new trial consistent with this opinion.

Chief Justice HOWE, Associate Chief Justice DURHAM, Justice ZIMMERMAN and Justice RUSSON concur in Justice STEWART's opinion.